**COHELAN KHOURY & SINGER**
Isam C. Khoury (SBN 58759)
ikhoury@ckslaw.com
Michael D. Singer (SBN 115301)
msinger@ckslaw.com
Maggie Realin (SBN 263639)
mrealin@ckslaw.com
Rosemary C. Khoury (SBN 331307)
rkhoury@ckslaw.com
605 C Street, Suite 200
San Diego, CA 92101
Telephone: (619) 595-3001/Facsimile: (619) 595-3000

Attorneys for Plaintiffs Daniel Grosso and Valencia Jefferson
on behalf of themselves and all others similarly situated

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL GROSSO and VALENCIA JEFFERSON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MASSAGE ENVY FRANCHISING, LLC, a Delaware Limited Liability Company; ME SPE FRANCHISING, LLC, a Delaware Limited Liability Company; MASSAGE ENVY FLW, LLC, an Arizona Limited Liability Company; ME HOLDING CORPORATION, a Georgia Corporation; ME FUNDING, LLC, a Delaware Limited Liability Company; ME SPE HOLDCO, LLC, a Delaware Limited Liability Company; MASSAGE ENVY CLINIC OPERATIONS, LLC, an Arizona Limited Liability Company; MASSAGE ENVY, LLC, a Delaware Limited Liability Company; and DOES 1 Through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Conversion<br>2. Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.<br>3. Violation of California's Automatic Purchase Renewals Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq*.<br>4. Violation of Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693, *et seq*.<br>5. Money Had and Received, Money Paid and Unjust Enrichment<br><br>**DEMAND FOR JURY TRIAL** |

## I. NATURE OF THE ACTION

1. This is a proposed nationwide and California class action alleging Defendants' improper collection of membership fees from Massage Envy franchise clients after the closing of franchises. Plaintiffs Daniel Grosso and Valencia Jefferson ("Plaintiffs") bring this lawsuit individually and on behalf of a Proposed Class of "All persons in the United States who have been charged a monthly membership fee by Defendants, after the Franchisee Entity location with which they entered into a Wellness Agreement closed, at any time within four years from the date this Class Action Complaint was filed" as well as on behalf of a Proposed Electronic Funds Transfer ("EFTA") class of "All persons in the United States whose bank accounts were debited on a reoccurring basis by Defendants, after the California Franchisee Entity location with which these persons entered into a Wellness Agreement closed, without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint." These monthly membership fee charges by Defendants have been rampant, to the detriment of the Proposed Classes and in violation of several laws, including conversion and common law claims for money had and received and unjust enrichment, and in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, California's Automatic Purchase Renewals Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*, and Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693, *et seq.*

## II. PARTIES

2. **Plaintiff** Daniel Grosso resides in Reno, Nevada. Mr. Grosso entered into a Wellness Agreement with the Massage Envy-Alameda Towne Centre Franchisee Entity location ("the Alameda location"), located at 2233 S. Shore Ctr., Alameda, California 94501, on April 14, 2008. Mr. Grosso was charged a monthly membership fee, which he could use to redeem for massages and other personal care services, called "Benefits." The Alameda location was closed in or about March 2024. Mr. Grosso was not notified of this closure, and no effort was made by the closed Massage Envy Franchisee Entity or any other party to direct him to another open Massage Envy Franchisee Entity location. During the duration of his Wellness Agreement, Mr.

1  Grosso sometimes redeemed Benefits at the Willows Massage Envy Franchisee Entity location
2  ("the Willows location"), located at 1975 Diamond Blvd. Ste. D-010 Concord, California 94520.
3  After the closure of the Alameda location, Mr. Grosso attempted to become a member of the
4  Willows location but was refused. Mr. Grosso believes he was denied membership at the
5  Willows location because the Willows location did not want to allow him to redeem Benefits
6  which he had accrued at the Alameda location. This is because the monthly membership fee paid
7  in exchange for these Benefits had been already collected by the Alameda location. The Willows
8  location, if it allowed Mr. Grosso to redeem these Benefits, would only receive a small payment
9  per massage from Defendants for honoring these accrued Benefits, and would not receive the
10 full monthly membership fee it received from its own current Members.

11         3.      **Plaintiff** Valencia Jefferson resides in the City of Carson within Los Angeles
12 County, California. Ms. Jefferson entered into a Wellness Agreement with the Carson Massage
13 Envy Franchisee Entity location ("the Carson location"), located at 21780 S. Avalon Blvd., Suite
14 101, Carson, California 90745, on October 6, 2019. Ms. Jefferson was charged a monthly
15 membership fee, which she could use to redeem Benefits. On or around March 19, 2020, the
16 Carson location closed. Ms. Jefferson was not notified prior to this closure, and no effort was
17 made by the closed Massage Envy Franchisee Entity or any other party to direct her to another
18 open Massage Envy Franchisee Entity location. After the closure of the Carson location, Ms.
19 Jefferson sometimes redeemed Benefits at the Long Beach-Bixby Knolls Massage Envy
20 Franchisee Entity location ("the LBBK location"), but this location was further away from her
21 residence and less convenient to visit. Ms. Jefferson did not redeem any Benefits from
22 approximately October 2022 through the end of her "membership" in August 2023.

23         4.      Although Ms. Jefferson's contract with Carson Massage Envy was no longer
24 operative, Ms. Jefferson's monthly membership fees were at one point restarted and were
25 charged by Defendants through April 2023 even though no new contractual relationship had
26 been created between her and Defendants.

27         5.      **Defendant** MASSAGE ENVY FRANCHISING, LLC is a Delaware Limited
28 Liability Company. **Defendant** ME SPE FRANCHISING, LLC is a Delaware Limited Liability

- 2 -
Class Action Complaint

1  Company. MASSAGE ENVY FLW, LLC is an Arizona Limited Liability Company. **Defendant**
2  ME HOLDING CORPORATION is a Georgia Corporation. **Defendant** ME FUNDING, LLC
3  is a Delaware Limited Liability Company. **Defendant** ME SPE HOLDCO, LLC is a Delaware
4  Limited Liability Company. **Defendant** MASSAGE ENVY CLINIC OPERATIONS, LLC is an
5  Arizona Limited Liability Company. **Defendant** MASSAGE ENVY, LLC is a Delaware
6  Limited Liability Company. Together, **Defendants** operate a national Franchise Network that
7  allows franchisees to operate Massage Envy Franchisee Entity locations using a membership-
8  based business model.

9      6.    Does 1 through 10, inclusive, are persons or entities whose true names and
10  identities are now unknown to Plaintiffs, and who are sued by such fictitious names. Plaintiffs
11  will amend this complaint to allege their true names and capacities when known.

12  **III.   JURISDICTION AND VENUE**

13      7.    This Court has jurisdiction over the subject matter of this action under 28 U.S.C.
14  §§ 1331 (federal question jurisdiction under, *inter alia*, Electronic Funds Transfer Act, 15 U.S.C.
15  §§ 1693, *et seq*.), 1332 (diversity jurisdiction), and 1367 (supplemental jurisdiction).

16      8.    This Court also has jurisdiction under the Class Action Fairness Act of 2005, 28
17  U.S.C. §§ 1332(d) and 1453, because the amount in controversy for this proposed class action
18  exceeds $5,000,000, there are more than 100 proposed class members, and at least one member
19  of the proposed class and one of the Defendants are citizens of different states (CAFA
20  jurisdiction).

21      9.    This Court has personal jurisdiction over Defendants because (a) a substantial
22  portion of the wrongdoing alleged in this Complaint took place in California, (b) Defendants
23  have sufficient minimum contacts with California, and have intentionally availed themselves of
24  the markets in California through the promotion, marketing, and sale of Membership Agreements
25  in California, and (c) the exercise of jurisdiction by this Court is permissible under traditional
26  notions of fair play and substantial justice.

27      10.    Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) and (2) because
28  several Defendants have a significant presence in California and a substantial part of the events

and omissions that give rise to Plaintiffs' and Class Members' claims occurred in this District. Venue is also proper under California Code of Civil Procedure section 395.5.

### IV. FACTUAL ALLEGATIONS

11. **Regarding Wellness Agreements**: (1) Defendants enter into franchise agreements with individuals to operate Massage Envy Franchisee Entity locations, with hundreds of Massage Envy Franchisee Entity locations currently in operation; (2) in turn, individual clients have the ability to enter into a "Wellness Agreement" with a particular Massage Envy Franchisee Entity, thereby becoming a "Member"; (3) Wellness Agreements are standard form agreements, issued by Defendants, which are entered into solely between the Member ("you") and the Franchisee Entity ("us");[1] (4) these Wellness Agreements explain what "Wellness Benefits" are (for instance, one 60-minute Wellness Massage), provide "Additional Benefit Details," set out "Payment Terms" (including the Initial Term of the Wellness Agreement, that the Agreement will automatically renew and continue on a month-to-month basis until cancelled or terminated, the Enrollment Fee, and whether the Member will be charged monthly or pay in full up front), describe "Cancellation/Use and Accrual of Wellness Benefits," contain a "Payment Method" section where Members may elect to be automatically charged on a Credit Card or have their bank account automatically debited monthly, and contain "Additional Wellness Agreement terms"; and (5) these Wellness Agreements specify, in pertinent part: under "additional Wellness Agreement terms" that "In the event of our closure, you will be directed to another Massage Envy® franchise"; under "Accrual of Wellness Benefits" that: "Benefits will accrue monthly and may be used after each monthly payment is received provided you are an active Member"; and under "Use of Accrued but Unused Wellness Benefits" that if the Wellness Agreement is not renewed, or is cancelled or terminated, the Member will have sixty days to redeem any

---

[1] The Wellness Agreements during the class period state, that: "This contract is between you and us. Neither ME SPE Franchising, LLC nor any of its past, present, or future affiliates, managers, or subsidiaries and their respective officers, directors, incorporators, members, partners, owners, agents, management, controlling parties, entities under common control, vendors, service providers, attorneys, employees, or representatives (all of the foregoing hereinafter referred to as "MEF") is a party to your Wellness Agreement or the Wellness Program."

accrued but unused Wellness Benefits, or they will expire, with no refund issuing.[2]

12. **Regarding Massage Envy Franchisee Entity Closures**: (1) Close to 200 Massage Envy Franchisee Entity locations have closed through 2023, affecting more than 120,000 Members; (2) when a Massage Envy Franchisee Entity location closes, Defendants (including Massage Envy FLW, LLC) take over the "dead" Wellness Agreement and continue to charge the monthly fees to the Member, despite not being parties to the Wellness Agreement and having no contractual relationship with the Member; (3) despite each Wellness Agreement stating that "[i]n the event of our closure, you will be directed to another Massage Envy® franchise," there is no procedure in place for this to be done; and Members seeking to become members at open Franchisee Entity locations are often turned away because the Franchisee Entity location is not being paid the monthly fee, which had already been collected by the closed Franchisee Entity location, instead receiving a much smaller payment from Defendants for allowing the Member to redeem the accrued but unused Benefits at their locations; and (4) the nearest open Massage Envy Franchisee Entity location is often further away or otherwise less convenient to visit than the closed location with which the Member contracted; thus Members are deprived of the full benefit of the bargain they previously received under their particular Wellness Agreement when their location closes.

13. **Plaintiff** Grosso entered into a Wellness Agreement with the Massage Envy-Alameda location on or about April 4, 2008. Mr. Grosso was charged a monthly membership fee, which he could use to redeem for "Benefits." The Alameda location was closed in or about

---

[2] "If your Agreement is not renewed, is cancelled, or is terminated for any reason (other than for any inappropriate conduct by you), you will have a 60-day period after such nonrenewal, cancellation, or termination to redeem any accrued but unused Wellness Benefits. UPON EXPIRATION OF THE SIXTY (60) DAY PERIOD, AFTER NONRENEWAL, CANCELLATION OR TERMINATION, ALL ACCRUED BUT UNUSED WELLNESS BENEFITS SHALL EXPIRE AND YOU WILL NO LONGER HAVE THE RIGHT TO USE ANY ACCRUED BUT UNUSED WELLNESS BENEFITS. YOU ACKNOWLEDGE AND AGREE THAT YOU HAVE NO RIGHT TO RECEIVE ANY REFUNDS OR CREDITS OF ANY KIND UNDER ANY CIRCUMSTANCES FOR ANY UNUSED WELLNESS BENEFITS, INCLUDING WITHOUT LIMITATION ANY UNUSED MASSAGES. . We may, in our sole discretion, extend the time period for you to redeem accrued but unused Wellness Benefits, but we are not obligated to do so. Any such extension must be in writing signed by you and us."

March 2024. Mr. Grosso was not notified of this closure, and no effort was made by the closed Massage Envy Franchisee Entity or any other party to direct him to another open Massage Envy Franchisee Entity location. During the duration of his Wellness Agreement, Mr. Grosso sometimes redeemed Benefits at the Willows location. After the closure of the Alameda location, Mr. Grosso attempted to become a member of the Willows location but was refused. Mr. Grosso believes he was denied membership at the Willows location because the Willows location did not want to allow him to redeem Benefits which he had accrued at the Alameda location. This is because the monthly membership fee paid in exchange for these Benefits had been already collected by the Alameda location. The Willows location, if it allowed Mr. Grosso to redeem these Benefits, would only receive a small payment per massage from Defendants for honoring these accrued Benefits, and would not receive the full monthly membership fee it received from its own current Members.

14. **Plaintiff** Jefferson entered into a Wellness Agreement with the Carson location, on or about October 6, 2019. Ms. Jefferson was charged a monthly membership fee, which she could use to redeem Benefits. On or around March 19, 2020, the Carson location closed. Ms. Jefferson was not notified prior to this closure, and no effort was made by the closed Massage Envy Franchisee Entity or any other party to direct her to another open Massage Envy Franchisee Entity location. After the closure of the Carson location, Ms. Jefferson sometimes redeemed Benefits at the LBBK location, but this location was further away from her residence and less convenient to visit. Ms. Jefferson did not redeem any Benefits from approximately October 2022 through the end of her "membership" in August 2023. Although Ms. Jefferson's contract with Carson Massage Envy was no longer operative, Ms. Jefferson's monthly membership fees were at one point restarted and were charged by Defendants through April 2023 even though no new contractual relationship had been created between her and Defendants.

## V. CLASS ACTION ALLEGATIONS

15. Plaintiffs bring this case as a proposed nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of all members of the following **Proposed National Class**: "All persons in the United States who have been charged

- 6 -
Class Action Complaint

a monthly membership fee by Defendants after the Franchisee Entity location with which they entered into a Wellness Agreement closed, at any time within four years from the date this Class Action Complaint was filed."

16. Within this Proposed Class, Plaintiff seeks to certify the following **Proposed California Class**: "All persons who have been charged a monthly membership fee by Defendants, while residing in California, after the California Franchisee Entity location with which they entered into a Wellness Agreement closed, at any time within four years from the date this Class Action Complaint was filed."

17. Plaintiffs also bring this case as a proposed nationwide class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of all members of the **Proposed Electronic Funds Transfer Act ("EFTA") Class**, defined as: "All persons in the United States whose bank accounts were debited on a reoccurring basis by Defendants, after the California Franchisee Entity location with which these persons entered into a Wellness Agreement closed, without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers within the one year prior to the filing of this Complaint."

18. Class treatment is appropriate because, under Federal Rule of Civil Procedure 23, the elements of numerosity, common and predominance, ascertainability, typicality, adequacy, and superiority are met by this proposed class action.

19. **Numerosity**. The potential members of the Proposed Classes as defined are so numerous that joinder of all members would be unfeasible and impractical. The disposition of their claims through this class action will benefit the parties and this Court. The number of members of the Proposed Classes is unknown, but each Proposed Class is estimated to contain thousands of individuals. The number and identity of members can be readily ascertained using Defendants' business records.

20. **Commonality and Predominance**. This action has been brought and may be maintained as a class action because there is a well-defined common interest of many persons and it is impractical to bring them all before the court. Common questions predominate,

including whether Defendants violated each cause of action herein by continuing to charge monthly membership fees to members whose contracted-with Franchisee Entity locations closed, after the date of such closure, despite Defendants having no contractual right to do so under the Wellness Agreements at issue.

21. **Ascertainability.** The Proposed Classes are ascertainable because they can be identified and located using Defendants' business records.

22. **Typicality.** The claims of Plaintiffs are typical of the claims of all members of the Proposed Classes and Subclasses because all members sustained similar injuries and damages caused by Defendants' common course of conduct in violation of law.

23. **Adequacy.** Plaintiffs are adequate representatives of the Proposed Classes, will fairly protect the interests of the Proposed Classes, and have no interests antagonistic to them, and will vigorously pursue this suit. Plaintiffs' attorneys are competent, skilled, and experienced in litigating large consumer class actions.

24. **Superiority.** A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Proposed Class Members is not practicable, and questions of law and fact common to the Proposed Classes predominate over questions affecting only individual members. A Class action will allow those similarly situated to litigate their claims in the most efficient and economical manner for the parties and the judicial system. Plaintiffs are unaware of any difficulties likely to be encountered in the management of this action that precludes its maintenance as a class action.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Conversion**
**(On behalf of Plaintiffs and the Proposed California Class)**

25. Plaintiffs incorporate the preceding paragraphs of this Complaint.

26. "Under California law, conversion is the wrongful exercise of dominion over another's personal property in denial of or inconsistent with his rights in the property…The elements of conversion are (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by wrongful act inconsistent with the property rights of the

1  plaintiff; and (3) damages. In California, conversion is a strict liability tort: Questions of good

2  faith, lack of knowledge, and motive are ordinarily immaterial." *Kasdan, Simonds, McIntyre,*

3  *Epstein & Martin v. World Sav. & Loan Ass'n (In re Emery)*, 317 F.3d 1064, 1069 (9th Cir. 2003)

4  (internal citations and quotations omitted).

5      27. Here, (1) Plaintiffs and Proposed California Class Members had the right to own

6  and/or control their credit cards and/or bank accounts; (2) Defendants wrongfully charged their

7  credit cards and/or debited their bank accounts without any contractual or other legal right to do

8  so; and (3) damages, in the amounts of monthly membership fees unlawfully charged, resulted.

9      28. Plaintiffs, individually and on behalf of all Proposed California Class Members,

10 seek an injunction that will prevent Defendants from continuing to charge their credit cards

11 and/or debit their bank accounts; damages in an amount that would fully compensate them; full

12 restitution; and disgorgement of Defendants' related profits and proceeds; and all other available

13 relief.

**SECOND CAUSE OF ACTION**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On behalf of Plaintiffs and the Proposed California Class)**

17     29. Plaintiffs incorporate the preceding paragraphs of this Complaint.

18     30. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice."

19 Cal. Bus. & Prof. Code § 17200. There is no scienter requirement under the UCL. *See, e.g.*, *Banh*

20 *v. Am. Honda Motor Co.*, 2020 U.S. Dist. LEXIS 139274, at *27 (C.D. Cal. July 28, 2020). To

21 recover under the UCL, "a plaintiff must generally show that she relied on the Defendant's act

22 of omission, which caused damage. *Id.* at *28.

23     31. Here, Plaintiffs have standing to assert this claim because they have suffered

24 injury in fact and lost money as a result of Defendants' conduct. Defendants have engaged in

25 unlawful and unfair business acts and practices under the UCL. Specifically, Defendants

26 unlawfully took over monthly membership fees, charging credit cards and/or debiting bank

27 accounts of individuals after these individuals' contracted with Franchisee Entity locations

28 closed, in violation of the California common law against conversion and California's Automatic

Purchase Renewals Law ("ARL"), satisfying both the unlawful and unfair prongs of the UCL, as explained in the first and third causes of action of this Complaint. Plaintiffs and Proposed California Class Members relied on the terms of the Wellness Agreements—standard form agreements, issued by Defendants—which informed them that only the Member and the Franchisee Entity location were parties to, and had rights under, the contract. Had Plaintiffs and Proposed California Class Members known that Defendants would continue to collect monthly membership fees after their contracted with Franchisee Entity location closed, they may not have entered into these Wellness Agreements at all. Defendants' conduct damaged Plaintiffs and Proposed California Class.

32. Plaintiffs, individually and on behalf of all Proposed California Class Members, seek an injunction that will prevent Defendants from continuing to charge their credit cards and debit their bank accounts; restitutionary disgorgement from Defendants of monies owed for charging Plaintiffs and Class Members' credit cards and/or debiting their bank accounts after California Class Members' contracted with Franchisee Entity locations closed; full restitution; and disgorgement of Defendants' related profits and proceeds; and all other available relief.

33. Plaintiffs have assumed the responsibility of enforcement of the laws and public policies specified here by suing on behalf of themselves and other similarly-situated California Class Members. Plaintiffs' success in this action will enforce important rights affecting the public interest. Plaintiffs will incur a financial burden in pursuing this action in the public interest. Therefore, an award of reasonable attorneys' fees to Plaintiffs is appropriate pursuant to Code of Civil Procedure section 1021.5.

**THIRD CAUSE OF ACTION**
**Violation of California's Automatic Purchase Renewals Law ("ARL")**
**Cal. Bus. & Prof. Code §§ 17535, 17600, *et seq*.**
**(On behalf of Plaintiffs and the Proposed California Class)**

34. Plaintiffs incorporate the preceding paragraphs of this Complaint.

35. It is unlawful for any business making an automatic renewal or continuous service offer to a consumer to "(1) Fail to present the automatic renewal offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled…; (2) charge

- 10 -
Class Action Complaint

the consumer's credit card, debit card, or account with a third party for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement…; [or] (3) Fail to provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer…." Cal. Bus. & Prof. Code § 17602(a).

36. "In any case in which a business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent as described in Section 17602, the goods, wares, merchandise, or products shall for all purposes be deemed an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business, including, but not limited to, bearing the cost of, or responsibility for, shipping any goods, wares, merchandise, or products to the business." Cal. Bus. & Prof. Code § 17603.

37. "[A]ll available civil remedies that apply to a violation of this article [including § 17602] may be employed." Cal. Bus. & Prof. Code § 17604(a). One such civil remedy applicable to a violation of Section 17602 is Section 17535, which provides for a private right of action to enjoin any person or business from violating Section 17602, and requires the violator to "restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful." *Id*. at § 17535. An action for injunction under Section 17535 "may be prosecuted … by any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter." "Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of this section and complies with Section 382 of the Code of Civil Procedure …" *Id*. at § 17203.

38. Here, Defendants were not parties to the automatic renewal provisions of the Wellness Agreements which they relied on to charge Plaintiffs and Proposed California Class Members' credit cards for monthly membership fees. Defendants provided no "clear and

conspicuous" notice that it would make these charges, Defendants made these charges "without first obtaining the consumer's affirmative consent to the agreement," and "failed to provide an [adequate] acknowledgement" as required by the ARL. *See id.* at § 17602(a). As a result, Plaintiffs and Proposed California Class Members suffered injury in fact and have lost money. Plaintiffs and the Proposed California Class members should not have been charged monthly membership fees by Defendants, and the "Benefits" they accrued should be deemed unconditional gifts. Cal. Bus. & Prof. Code § 17603.

39. Plaintiffs, individually and on behalf of all Proposed California Class Members, seek an injunction that will prevent Defendants from continuing to charge their credit cards and debit their bank accounts; damages in an amount that would fully compensate them; full restitution; and disgorgement of Defendants' related profits and proceeds; and all other available relief.

**FOURTH CAUSE OF ACTION**
**Violation of Electronic Funds Transfer Act, 15 U.S.C. §§ 1693, *et seq.***
**(On Behalf of Plaintiffs and the Proposed EFTA Class)**

40. Plaintiffs incorporate the preceding paragraphs of this Complaint.

41. Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

42. Section 903(9) of the EFTA, 15 U.S.C. § 1693a(9), provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals."

43. Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

44. Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.l0(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id.* at ¶ 10(b), comment 5. The

Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id.* at ¶ 10(b), comment 6.

45. In multiple instances, after the Franchisee Entity locations EFTA Class Members contracted with closed, Defendants have debited the members of the putative EFTA Class Members' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.l0(b).

46. In doing so, Defendants have violated EFTA.

47. Plaintiffs seek statutory damages of $1,000.00, per EFTA Class Member, pursuant to the Electronic Fund Transfer Act, § 916(a)(2)(A), and other remedies as awarded by the Court.

### FIFTH CAUSE OF ACTION
**Money Had and Received, Money Paid and Unjust Enrichment**
**(On behalf of Plaintiffs and the Proposed National Class)**

48. Plaintiffs incorporate the preceding paragraphs of this Complaint.

49. As a result of Defendants' unlawful and unfair business practices and in consideration thereof, during the relevant time period set forth above, the Class Members paid money to and conferred a benefit upon Defendants in connection with being charged by Defendants monthly membership fees after the contracted-with Franchisee Entity locations closed, which monies were originally in the Class Members' possession.

50. Defendants received, retained or appropriated these benefits under such circumstances that it would be inequitable and unjust to permit Defendants to retain such monies at the expense of the Class Members. Defendants, as a result of such conduct, became indebted to the Class Members for the sums paid to defendant by Class Members as set forth in detail above, with interest thereon. No such sums have been paid to the Class Members.

51. In fairness, all such monies, including all interest Defendants have earned on such monies while in wrongful possession thereof, should be disgorged by Defendants and paid to

members of the Class under principles of unjust enrichment. No violation of law or public policy would be promoted by such relief.

52. As a direct and proximate result of Defendants' conduct resulting in their unjust enrichment, Plaintiffs and Class Members suffered injury, and therefore seek an order directing Defendants to return the amount each of them were improperly induced to pay to Defendants, plus interest thereon, as well as impose a constructive trust over such monies.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Proposed Class Members, request the following relief against Defendants:

1. Certification of this action as a class action under Federal Rule of Civil Procedure 23, with Plaintiffs appointed Class Representatives and Cohelan Khoury & Singer appointed Class Counsel;

2. An award of actual damages, according to proof;

3. Statutory damages of $1,000 per EFTA Class Member, pursuant to Electronic Fund Transfer Act, § 916(a)(2)(A);

4. An award of restitution or disgorgement of profits and revenues to make Plaintiffs and the Proposed Classes whole, according to proof;

5. That Defendants be permanently enjoined from engaging in the unlawful and unfair acts and practices alleged;

6. A declaratory judgment that Defendants, by charging a monthly membership fee to individuals after the Franchisee Entity location with which they entered into a Wellness Agreement closed: (i) engaged in conversion and unjust enrichment; (ii) violated the UCL; (iii) violated the ARL; (iv) violated the EFTA;

7. An order directing Defendants to return to Class Members amount each of them were improperly induced to pay to Defendants, plus interest, as well as an order imposing a constructive trust over such monies;

8. An award of pre-judgment and post-judgment interest, as allowed by law;

9. Reasonable attorneys' fees and costs, pursuant to California Code of Civil

- 14 -
Class Action Complaint

Procedure section 1021.5 and/or all other applicable laws; and

10. All other relief the Court deems appropriate.

                           COHELAN KHOURY & SINGER

Dated: August 21, 2024          By  s/Isam C. Khoury
                                       Isam C. Khoury
                                       Michael D. Singer
                                       Maggie K. Realin
                                       Rosemary C. Khoury
Attorneys for Plaintiffs DANIEL GROSSO and VALENCIA JEFFERSON, on behalf of themselves and all others similarly situated

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial of all claims triable as of right by jury.

                           COHELAN KHOURY & SINGER

Dated: August 21, 2024          By  s/Isam C. Khoury
                                       Isam C. Khoury
                                       Michael D. Singer
                                       Maggie K. Realin
                                       Rosemary C. Khoury
Attorneys for Plaintiffs DANIEL GROSSO and VALENCIA JEFFERSON, on behalf of themselves and all others similarly situated